IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHAIKH MASOOD,<br>Plaintiff, | § § § § | |
| V. | § | CIVIL ACTION NO. 4:16-cv-01010 |
| | § § | |
| CAROLYN W. COLVIN, ACTING<br>COMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br>Defendant. | § § § § | |

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court[1] in this social security appeal is Defendant's Cross Motion for Summary Judgment (Document No. 12) and Brief in Support (Document no. 13), as well as Plaintiff's Motion for Summary Judgment (Document No. 14) and Brief in Support (Document No. 15). After considering the cross motions for summary judgment, Defendant's Response to Plaintiff's Motion for Summary Judgement (Document No. 16), the administrative record, the written decision of the Administrative Law Judge dated September 26, 2014, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and this case is REMANDED pursuant to 42 U.S.C. § 405(g) for further development of the administrative record and subsequent proceedings.

---

[1] On August 14, 2016, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 10.

## I. Introduction

Plaintiff Shaikh Masood ("Masood") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of the adverse final decision by the Commissioner of the Social Security Administration ("Commissioner") on his claim for disability insurance benefits. In his appeal, Masood argues that: (1) "The Appeals Council's finding that new evidence submitted to it was not new and material evidence, is contrary to the law;" (2) "The Agency failed to consider the opinion evidence of Dr. Adnan Rafiq in accordance with Agency policy, regulations, and Fifth Circuit Precedent, thereby dismissing the account of the greater limitations established by Dr. Rafiq;" (3) "The Administrative Law Judge ("ALJ") erred by failing to account for Plaintiff's left shoulder impairment and hearing loss in the Residual Function Capacity ("RFC") determination;" (4) "The ALJ erred by failing to develop the record with regard to Plaintiff's mental impairments;" and (5) "The ALJ erred when he failed to adhere to unambiguous Agency policy requiring review of the record by a qualified psychologist in cases involving mental impairment." Plaintiff's Motion for Summary Judgment (Document No. 15) at 4, 9, 11, 14, 18 and 20. The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's decision, that the decision comports with the applicable law, that the ALJ had no duty to further develop the record beyond what had been established, and that the decision should be affirmed.

## II. Procedural History

Masood filed an application for Title II disability insurance benefits on March 7, 2013, claiming that he has been disabled since December 21, 2010, as a result of hearing problems,

arthritis, back problems, memory loss, neck injury, and an immobile right hand (Tr. 126, 193-94, 233). The Commissioner denied the application initially, and on reconsideration. Masood's subsequent request for a hearing before the ALJ was granted, and a hearing was held before the ALJ, Allen G. Erickson, on May 8, 2014, at which plaintiff's claims were considered *de novo* (Tr. 39-100). After the hearing and upon consideration of the medical records provided and the testimony of a vocational expert, the ALJ issued an unfavorable decision denying Masood's claim for disability benefits (Tr. 126-133).

Masood sought review of the unfavorable decision with the Appeals Council. The Appeals Council will grant a request for review of an ALJ's decision if: (1) the ALJ appears to have abused his or her discretion; (2) there is an error of law; (3) the decision is not supported by substantial evidence; (4) there is a broad policy or procedural issue that may affect the public interest; (4) new and material evidence is received and the decision is contrary to the weight of all the evidence now in the record, including this new and material evidence. 20 C.F.R. § 416.1470. The Appeals Council denied Masood's request for review on March 2, 2016 (Tr. 22-24), stating therein that the new evidence Masood provided as the basis for review was not new evidence, but copies of Exhibit 4F and 10F within the record (Tr. 23). As such, the Appeals Council affirmed the decision by the ALJ, thereby making the ALJ's decision final (Tr. 23).

Masood has filed a timely appeal of the ALJ's decision. 42 U.S.C § 405(g). The parties have filed cross motions for summary judgment (Document Nos. 12 & 14). The appeal is now ripe for ruling.

3

## III. Standard of Review of Agency Decision

Pursuant to 42 U.S.C § 405(g), a review of the final decision by the Social Security Administration is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with the relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). If the findings by the Commissioner are supported by substantial evidence, then these findings "are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Act grants the district courts the power to enter judgement, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). We weigh four elements of proof when determining whether there is a substantial evidence of disability: "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education and work history." *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Though the court has a duty to examine the record fully when rendering a decision, it is not within the court's discretion to "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgement for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). The term "substantial evidence," as used within the Act, has been defined by the United States Supreme Court to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla, less than a preponderance." *Hames v Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

Furthermore, such evidence creates more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.*

IV. **Burden of Proof**

To be entitled to disability insurance benefits, the claimant must establish that he or she is disabled. As defined by the Act, a person is disabled when he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expect to...last for a continuous period of not less than twelve months." 42 U.S.C § 423(d)(1)(A).

This disability determination is accomplished by the ALJ through administering a five-step procedure as mandated by the Social Security Act. The rules governing this evaluation process are illustrated cogently in *Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999):

> First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Id.* at 197-98.

The ALJ in the instant case employed this procedure when evaluating Plaintiff's disability claim. At step one, the ALJ determined that Masood had not engaged in substantial

5

gainful activity since the alleged onset date, December 21, 2010 (Tr. 128, Finding 2). At step two, the ALJ determined, through medical and testimonial evidence, that Masood suffered from the following severe impairments: spondylolysis, anterolisthesis, degenerative disc disease, degenerative joint disease, L5 pars defect of the lumbar spine, and degenerative disc and joint disease of the cervical spine (Tr. 128, Finding 3). At step three, the ALJ concluded that Masood's impairments, neither individually nor in combination, equaled an impairment as listed in 20 C.F.R Part 404, Subpart P, Appendix 1 (Tr. 130, Finding 4). Before continuing to step four, the ALJ determined that Masood had the RFC to perform a limited range of light work (Tr. 130, Finding 4) which only required occasional climbing of ladders, ropes, or scaffolding; occasional crawling; and occasional exposure to vibrations (Tr. 130, Finding 5). At step four, using this RFC, the ALJ determined that Masood could perform his past relevant work as a convenience store clerk (Tr. 132, Finding 6). Because Masood was determined to be capable of continuing past relevant work, the ALJ concluded that he was not disabled within the meaning of the Act between his alleged onset date, December 21, 2010, and the date of the ALJ's decision on September 26, 2014.

Masood raises numerous issues and arguments in this appeal. But, because the undersigned concludes, for the reasons set forth below, that it was the ALJ's consideration of Masood's alleged memory loss, a consideration which did not proceed past step two, that is most troubling, it is that alleged impairment and the ALJ's consideration thereof that will form the basis of this decision. In that regard, the record shows that the ALJ's entire consideration of Masood's alleged memory loss was as follows:

> The undersigned also finds the claimant's alleged cognitive disorder to be non-medically determinable. Simply put, there is no evidence in the record such as testing, consistent doctor observations and the like, which confirms this alleged impairment. In June 2010, the claimant complained of cognitive issues (Exhibit 6F), but no testing was completed.

6

> Conversely, in August 2013, the claimant denied any cognitive issues at all and his mental faculties were noted to be entirely intact (Exhibit 14F). Then, in December 2013, he complained of memory loss to a physical therapist (Exhibit 12F). Nothing is noted of complaints of cognitive issues thereafter and no testing of any kind was ordered.
>
> In May 2013 and April 2014, Adman M. Rafiiq, M.D., diagnosed memory loss due to a motor vehicle accident. He opined poor or no ability to interact with the general public, get along with co-workers, remember work-like procedures, understand and remember short and simple instructions, maintain attention for two hour segments, complete a normal work day, perform at a consistent pace, and respond to changes in routine; fair ability to carry out short and simple instructions, and accept instructions and respond to criticism; and poor ability to understand, remember, and carry out detailed instructions (Exhibit 4F, 10F). The undersigned rejects this out of hand and assigns no weight to these opinions because nothing in the record supports them.
>
> Notably, the state agency found no mental impairments (Exhibits 1A, 3A) and the claimant did not testify to any cognitive problems.

(Tr. 130). This determination at step two, particularly when the ALJ did not include Masood's alleged memory loss in any subsequent analysis of Masood's RFC, constitutes error for two inter-related reasons. First, it evidences a failure to develop the record with respect to Masood's alleged memory loss. Second, it is based on an incomplete explanation of why no weight was given to the memory loss opinions of Dr. Rafiq.

### V.   Discussion

As set forth above, the claimant bears the burden of proof on the first four steps of the disability analysis. That entails, at step-two, a showing that the claimant has a severe impairment or a combination of impairments that are significant enough to limit their physical or mental abilities to perform competently in a work environment. The step two requirement is generally considered to be "a de minimums screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987)). "[A]n impairment can be considered as not severe only if it is a slight abnormality

7

[having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

Under the government regulations, "If you do not have a severe medically determinable physical or mental impairment…or a combination of impairments that is severe…, we will find that you are not disabled." 20 C.F.R § 416.920(a)(4)(ii) (emphasis added). Therefore, to proceed beyond step two, a claimant is only required to prove a single severe impairment. Failure to find a specific impairment severe is generally not grounds for reversal or remand assuming that the ALJ found at least one other impairment to be severe at step two. If, however, the ALJ does not find that that any of the claimant's impairments are severe in isolation, the ALJ is still required to "consider the limiting effects of all [of claimant's] impairments(s), even those that are not severe, in determining [RFC]." 20. C.F.R §§ 404.1545(e), 416.945(e); *see also* 20 C.F.R § 404.1523; Social Security Ruling 96-8p, 1996 WL 374184, at *5; *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (The ALJ must "consider the combined effects of all impairments, without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

Within the record are two expert medical opinions by Dr. Adman Rafiq, M.D. about Masood's memory loss. (Tr. 342-44; 433-35). And while it is not entirely clear whether Dr. Rafiq was Masood's treating physician, the parties do seem to agree that Dr. Rafiq at least had some patient-physician relationship with Massod, having referred him to Houston Rheumatology, where Michelle Elsenberg. M.D., administered a full physical examination on August 7, 2013. (Tr. 458-460). In that rheumatology assessment, Dr. Elsenberg noted Masood's "memory issues," which appear to have formed the basis for Dr. Rafiq's opinions

about Masood's mental capabilities. (Tr. 460, 342). According to Dr. Rafiq in the written Medical Opinion Questionnaires he completed in May 2013 and April 2014 (Tr. 342-44; 433-35), Masood's memory loss, secondary to a motor vehicle accident, posed numerous work related challenges, including poor interactions with coworkers; remembering short and simple instructions; remembering work-like procedures; maintaining attention for two-hour segments, responding to changes in routine, and being unable to carry out duties that would be expected of a normal employee. *Id.*

As set forth above, the ALJ dismissed these opinions and rejected them out of hand, assigning them no weight because the ALJ claimed there was nothing in the record that supported them. (Tr. 129-130). The ALJ also dismissed Dr. Rafiq's opinions because without support found in the medical record, a medical expert's opinions could be attributed with little to no weight. *See Greenspan v Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Furthermore, when Masood testified during the ALJ hearing that he would often have bouts of memory loss, so acute that he would forget where he parked his car when going to the grocery store, the ALJ still held that this evidence had no bearing on Masood's disability evaluation, and gave the testimony no consideration (Tr. 80).

The conclusions made by the ALJ at step two about Masood's memory loss are not supported by the existing administrative record. Masood argues that Dr. Rafiq's medical opinion should have been given greater weight and that his mental impairments should have been considered at step-two of the disability determination process. As discussed previously, Dr. Rafiq's medical opinions were based upon the medical examination made by Dr. Michelle Elsenberg at Houston Rheumatology (Tr. 458-460). Furthermore, Dr. Elsenberg's assessment that Masood had "memory issues" was affirmed during Plaintiff's follow up visits on October

14, 2013 and December 24, 2013. (Tr. 463, 466). Dr. Rafiq's medical opinion, supported by medical evidence, constructively created a duty for the ALJ to further develop the record in the form of either a psychiatric or psychological evaluation by a specialist to ascertain the nature and extent of Masood's cognitive defects as demanded by law. 20 C.F.R § 404.1420(a)(c)(3-4).

Disability proceedings are not meant to be adversarial, rather, the ALJ's "basic obligation [is] to develop a full and fair record" *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). The Act specifically details the Commissioner's duty to develop the record before establishing a disability determination:

> Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.

20 C.F.R. § 404. 1512(d). While developing the record, an ALJ may find good cause for discounting the weight of a medical opinion when that opinion is "unsupported by medically acceptable clinical, laboratory, or diagnostic techniques." *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). When there is a lack of evidence to support a medical opinion, or if there is conclusive evidence that is contrary to the medical opinion in question, the ALJ is free to reject these opinions. *Id.* at 455. However, when the treating source's medical opinions are inconclusive or contradictory, the ALJ's ability to dismiss medical opinions that were contrary to the treating source is diminished. *Id.* Moreover, when the treating source's opinion appears to be lacking, inconclusive, or contradictory, regulations permit that the ALJ is required to obtain supplemental information to clarify a treating source's medical opinion that is shown to be inconsistent. *Id.* at 457. In effect, this creates a situation where the ALJ is obligated to at least

10

consider further evidence as presented by the Plaintiff. Additionally, the Fifth Circuit has determined that when omissions and gaps are present in the medical opinion, the ALJ cannot suitably determine the proper weight to give such evidence, thereby preventing a decision with the requisite support needed to establish a residual functional capacity for the Plaintiff. *Id.* at 458. If the ALJ fails to apply these standards of developing the record during his determination for disability, "he does not have before him sufficient facts on which to make an informed decision," as such, his decision is not supported by substantial evidence. *Kane*, 731 F.2d at 1219.

The opinion in *Kane* explains that, "the duty does not exact a lengthy or protracted inquiry," rather, "it does exact a careful effort to make a complete record." *Id.* This obligation to act in a proactive manner during the development of the administrative record is articulated in the Code of Federal Regulations. Wherein, if the ALJ believes that there is insufficiency or inconsistency within the record, he must; (1) determine what additional action is necessary; and (2) take the action determined to be necessary. 10 C.F.R. § 404.1520(b)(c); § 404.1520(b). This means that when the ALJ recognizes an inadequate record, he or she is compelled to develop it further, even during an ALJ hearing.

Here, the ALJ failed to recognize inconsistencies within the record that directly contradict the basis he set forth for discrediting Dr. Rafiq's medical opinion regarding Plaintiff's cognitive disabilities, and as such, failed to consider Dr. Rafiq's medical opinion or attempt to clarify the issues found in the present medical evidence. Although the Commissioner correctly notes that a physician's opinions may be rejected by the ALJ in the disability determination when the evidence supports a contrary conclusion, *see Martinez v. Charter*, 64 F.3d 172, 176 (5th Cir. 1980), the evidence to which the Commissioner points is neither consistent nor conclusive. The ALJ references Exhibit 14F, a physical examination by Houston

Rheumatologist Dr. Michelle Elsenberg conducted on August 7, 2013, as inconsistent with Dr. Rafiq's medical opinions (Tr. 130). In that examination, Dr. Elsenberg found Masood's recent and remote memory to be "intact," and his attention and concentration were normal (Tr. 459). That part of Dr. Elsenberg's evaluation, admittedly, could be seen as inconsistent with the opinion(s) of Dr. Rafiq, but Dr. Elsenberg also writes, based on the same evaluation/examination, that Masood "has memory issues." (Tr. 460). For a medical report to document that Masood's memory was intact, only to completely contradict that statement in the assessment, leads to serious inconsistencies with regards to establishing a clear picture of Masood's cognitive impairments or lack thereof. Such a contradictory report is very different from what the Fifth Circuit would deem objectively convincing enough to negate Masood's claims of memory loss. The fact that all three visits to Houston Rheumatology, cited by the ALJ, contain references to Masood's memory issues both corroborates Dr. Rafiq's opinions and renders factually incorrect the ALJ's determination that Masood's memory loss claim has no evidentiary support.

In the ALJ's decision, he explicitly states that Masood's cognitive impairments are "non-medically determinable" and that there is "no evidence in the record such as testing [or] consistent doctor observations and the like" which would provide a conclusive understanding of Masood's mental health (Tr. 129). If there is any reason for a lack of support for Masood's claim, it cannot be solely attributable to a lack of due diligence on the part of Masood to offer such evidence; instead, the lack of evidentiary support can also be attributed to a lack of initiative on the part of the ALJ to investigate and explore the claims and evidence presented by Masood. Aside from Dr. Rafiq's opinion, there is no further inquiry as to the seriousness of Masood's claimed memory loss. This shows a failure to adhere to Fifth Circuit precedent and

directives ascribed within the Act that compel the ALJ to further investigate and develop the record when a proper determination is not possible with the medical evidence that was available. See *Newton*, 209 F.3d at 457; 20 C.F.R § 404.1420(a)(c)(3-4). The ALJ failed to recognize that this is the very reason there is a duty imposed upon his station to further develop the record when inconsistencies within the record are apparent. As such, this failure to action implies that the ALJ did not have the substantial evidence to support his disability determination.

Masood's testimony at the hearing also gave rise to the need for further development of the record relative to his alleged memory loss. Masood's representative at the hearing specifically mentioned Masood's cognitive issues. Masood then testified that he has trouble remembering certain events and actions, that the memory issues can be so severe that he will forget where he parked his car while returning from the grocery store (Tr. 80). Although Masood did not use the words 'memory loss,' *Kane* demonstrates that explicit language is not necessary, and that the preface by Masood's attorney and Masood's re-telling of memory loss were enough to signal a further inquiry into his mental impairments. The ALJ should have at least made a passing inquiry as to the cognitive issues expressed by the Masood. *See Kane*, 731 F.2d at 1220 ("testimony suggesting cumulative symptoms sufficient to be disabling was not to be merely disregarded or "uh-huh"ed.").

Given the unsupported dismissal of medical records and opinions evidencing Masood's alleged memory loss, as well as the uncertainty about whether Dr. Rafiq was, or could have been considered to be, Masood's treating physician, the undersigned concludes that the ALJ 's step two determination about Masood's memory loss is not supported by substantial evidence. That error at step two, despite the fact that he ALJ did proceed beyond step two, arguably affected the

13

ALJ's RFC, which did not take into account any mental impairments or any limitations related thereto.

An ALJ's failure to develop of the record warrants a remand if a claimant can show that he was prejudiced, *Newton*, 209 F.3d at 457, meaning in this context that had the record been further developed, the resulting evidence might have led to a different decision. *See Ripley v Chater*, 67 F.3d 552, 557 (5th Cir. 1999). ("Following an adverse decision, Plaintiffs argued that a lack of medical source opinion regarding ability compelled the court to remand the case to the ALJ as medical opinions regarding capability were deemed enough to change the course of the determination.") The evidence does not have to be conclusive or exhaustive, but it must provide a reasonable indication of what evidence needs to be developed and how that evidence may potential alter or change the ALJ's original opinion. *Id.* Conversely, when the administrative record is well developed and contains information pertaining to the same subject matter the Plaintiff claims has not been developed, courts will not grant a reversal to the decision because the evidence is already present in the information, and more of its kind would not change the decision. See *Brock*, 84 F.3d at 728.

In the absence of any meaningful examinations or tests done regarding Masood's cognitive impairments, it is reasonable to assume, given the contents of Dr. Rafiq's opinions, that further development of the record could alter or change the ALJ's decision. As such, the ALJ's error(s) at stop two warrant a remand of this case for further proceedings.

## VI. Conclusion and Order

Based on the foregoing, and the conclusion that the ALJ erred at step two in his assessment of Masood's memory loss, and that that error may have affected the ALJ's RFC assessment and his ultimate disability determination, it is

ORDERED that Plaintiff's Motion for Summary Judgment for Summary Judgment (Document No. 14) is GRANTED, Defendant's Cross Motion for Summary Judgment (Document No. 12) is DENIED, and this proceeding is REMANDED to the Commissioner pursuant to § 405(g), sentence four, for further development of the administrative record regarding Plaintiff's mental cognitive abilities.

Signed at Houston, Texas, this 14th day of September, 2017

*Frances H. Stacy*
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE